UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA SANCHEZ,<br><br>            Plaintiff,<br><br>    vs.<br><br>COUNTY OF LOS ANGELES; Y. CHENG; J. ZAVALA; and O. ESTRADA,<br><br>            Defendants. | Case No. CV 22-289-DMG (GJSx)<br><br>**ORDER RE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [47] [51]** |

      Before the Court are two Motions for Summary Judgment ("MSJ"): one filed by the County of Los Angeles (the "County") [Doc. # 47 ("County MSJ")], and one filed by Individual Defendants J. Cheng, J. Zavala, and O. Estrada [Doc. # 52 ("Individual MSJ")]. The MSJs are fully briefed. [Doc. ## 50 ("County Opp."), 58 ("Individual Opp."), 59 ("County Reply"), 60 ("Individual Reply").] The Court held a hearing on the motions on December 1, 2023. For the following reasons, the Court **GRANTS** the Individual MSJ and the County MSJ.

# I.
# PROCEDURAL BACKGROUND

Plaintiff Joshua Sanchez filed the instant action on November 15, 2021 in the Los Angeles County Superior Court. *See* Ntc. of Removal, Decl. of Gayane Muradyan, Ex. A ("Compl.") [Doc. # 1-2]. The Complaint alleges that Defendants violated Sanchez's constitutional rights under the First, Fourth, and Fourteenth Amendments when the Individual Defendants subjected him to an alleged "hazing ritual" before he enrolled at the Los Angeles County Sheriff's Academy. *See id.* ¶ 1. He initially alleged two claims against the Individual Defendants and three against the County, but the Court dismissed his First Amendment retaliation claim against the County on June 24, 2022. [Doc. # 25.]

Defendants timely removed the case on January 13, 2022, and filed their Answers on April 8, 2022 and August 5, 2022 [Doc. ## 1, 23, 28.] On October 20, 2023, the County moved for summary judgment on Sanchez's claims for public entity liability. *See generally* County MSJ. On October 27, 2023, the Individual Defendants filed a separate MSJ seeking summary judgment on Sanchez's claims against them. *See* Individual MSJ at 9.[1]

# II.
# FACTUAL BACKGROUND[2]

At all relevant times, Sanchez and the Individual Defendants were co-workers at the Twin Towers Correctional Facility ("TTCF") in Los Angeles. CSUF 1. Sanchez and Cheng worked as Custody Assistants, and Zavala and Estrada were Sheriff's deputies.

---

[1] All page citations herein refer to the page numbers inserted by the CM/ECF system.

[2] The facts in this section are uncontroverted and drawn from the County's Statement of Undisputed Facts ("CSUF") [Doc. # 47-1 ("County SUF")], as set forth with Sanchez's Statement of Genuine Disputes and Additional Facts [Doc. # 50-7] and the County's Responses [Doc. # 59-1], as well as the Individual Defendants' SUF ("IDSUF") [Doc. # 51-1], Sanchez's Statement of Genuine Disputes [Doc. # 58-1], and the Individual Defendants' Responses [Doc. # 60-1]. Many of the parties' purportedly disputed facts are not in fact controverted by the evidence, and the Court therefore cites to them as uncontroverted facts. The Court has reviewed the entire record, but only discusses the uncontroverted facts that are necessary to or affects its analysis. Many statements in the various SUFs and responses appear more than once, but the Court will not provide duplicate cites.

CSUF 27, 29. While working at TTCF, Sanchez applied to and was accepted into the Los Angeles County Sheriff's Academy. CSUF 3. He was scheduled to begin training at the Sheriff's Academy on December 5, 2019. CSUF 3.

On November 29, 2019, approximately one week prior to his start date at the Sheriff's Academy, Sanchez worked his final shift at TTCF. CSUF 4. At the time of the incident, Sanchez and the Individual Defendants were gathered in the "D.E.F. Indoor Recreation Room" as they completed their shifts, prior to the transition to the next shift. ISUF 4. Sanchez announced to the others that it was his last day at TTCF. ISUF 7.

Everyone was "horsing around" in the Recreation Room, and a disputed series of events transpired after Sanchez's "announcement." *See* CSUF 13; County MSJ at 10–11; County Opp. at 6–7; Individual MSJ at 7–8; Individual Opp. at 5–6. Sanchez claims that at that time, Zavala informed him there is a "tradition" of sending people off on a "good note" before they leave for the Sheriff's Academy. CSUF 4; ISUF 8. What is undisputed is that Zavala then drew his taser and acted like he was going to tase Sanchez's left leg, in front of Estrada and Cheng. CSUF 5; ISUF 13. Sanchez was sitting in a wheeled office chair, and immediately rolled backwards to avoid being stunned by Zavala's taser. CSUF 5. The taser hit Sanchez's finger as he backed away and put his hands up. ISUF 24. As Sanchez was pushing away from Zavala, Cheng motioned for Estrada's taser and Estrada gave his taser to Cheng, who used it to tase Sanchez in the right thigh. CSUF 6; ISUF 15.

After the incident, Sanchez felt significant pain, but was told the pain would go away and to "walk it off." CSUF 16. He attempted to resume his job duties that day, but was unable to do so because he was in too much pain from the incident. CSUF 17. He went to the emergency room in San Dimas Community Hospital for treatment. CSUF 18.

County policy prohibits hazing, bullying, and using tasers on fellow employees. CSUF 96, 119. Custody Assistants like Cheng are not given any authority whatsoever to use a taser. CSUF 23, 25. The County investigated the incident, and ultimately Cheng and Zavala were disciplined. CSUF 33.

## III.
## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."), *cert. denied City of Santa Cruz, Cal. v. Norse*, 565 U.S. 823, 132 S. Ct. 112 (2011). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." *Id.*

## IV.
## DISCUSSION

Under 42 U.S.C. section 1983, a plaintiff may bring a civil action for the deprivation of constitutional rights by an individual acting under color of state law. 42 U.S.C. § 1983; *see Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014) ("Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal

constitutional or statutory rights." (citation omitted)), *cert. denied Moody v. Tatum*, 575 U.S. 1009 (2015). The two essential elements of a Section 1983 claim are that the defendant acted under color of law, and his conduct deprived the plaintiff of a constitutional right. *Stein v. Ryan*, 662 F.3d 1114, 1118 (9th Cir. 2011). A government entity may be held liable under Section 1983 if it maintains a policy or custom that causes the deprivation of a plaintiff's federally protected rights, or if it fails to provide proper training to the point of exhibiting "deliberate indifference to the rights of persons with whom the [agency] come[s] into contact." *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 389–90 (1989); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694–95 (1978).

A Section 1983 defendant acts "under color of state law" if he "exercise[s] power possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law." This requirement in the Section 1983 context is functionally equivalent to the Fourteenth Amendment's state action requirement. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (citing *United States v. Price*, 383 U.S. 787, 794, n.7 (1966) ("In cases under [section] 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment.")); *see also Jensen v. Lane Cnty.*, 222 F.3d 570, 574 (9th Cir. 2000) (same).

**A.     Individual Defendants**

"[T]here is no rigid formula for measuring state action for purposes of section 1983 liability." *Gritchen v. Collier*, 254 F.3d 807, 813 (9th Cir. 2001) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)). Still, "[s]tate employment is generally sufficient to render the defendant a state actor, but whether an officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006) (internal quotation marks, ellipses, brackets, and citations omitted) (quoting *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995)); *cf. Naffe v. Frey*, 789 F.3d 1030, 1037 (9th Cir. 2015) (under Ninth Circuit precedent, "a state employee who is on duty . . . typically acts under color of state law . . . even if the employee's offensive actions

were illegal or unauthorized."); *see also West v. Atkins*, 487 U.S. 42, 50 (1988) ("Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.") (citations omitted). If a public employee is acting "in the ambit of their personal pursuits," however, that individual is "plainly excluded" from the state action requirement. *McDade*, 223 F.3d at 1140 (citing *Screws v. United States*, 325 U.S. 91, 92–93 (1945)).

The Ninth Circuit has not directly addressed the question of when use of force between two on-duty law enforcement officers is considered to be "under color of law," so courts in this district frequently cite *Martinez*, a First Circuit opinion, for guidance in these types of cases. *See, e.g.*, *Naffe*, 789 F.3d at 1037; *Anderson*, 451 F.3d at 1068; *Hyun Ju Park v. City & Cnty. of Honolulu*, 292 F. Supp. 3d 1080, 1092 (D. Haw. 2018); *Monteilh v. Cnty. of Los Angeles*, 820 F. Supp. 2d 1081, 1092 (C.D. Cal. 2011). *Martinez* involved an incident between two on-duty police officers that resulted in the accidental discharge of a revolver pointed at Martinez's groin, thereby "maiming" him. 54 F.3d at 982. The First Circuit held that the officer who shot the revolver was "engaged in purely personal pursuits" at the time of the incident, and thus did not act under color of law. *Id.* at 987–88. Even though he was "on duty and in uniform," his "status as a police officer simply did not enter into his benighted harassment of his fellow officer," because he was engaged in a "singularly personal frolic." *Id.* at 987.

Citing *Martinez*, *Anderson* sets forth a three-part test to determine whether a defendant is acting under color of state law, generally used when the officer was off-duty at the time of the incident. In *Anderson*, the Ninth Circuit held that an officer was acting under color of state law when he explicitly invoked his law enforcement status to keep bystanders from interfering with his assault of a motorist who had rear-ended him, even though he was off-duty at the time. 451 F.3d at 1068–69. In doing so, the opinion set forth three "critical requirements that must be satisfied," albeit limited to the specific circumstances of the case. *Id.* at 1068. First, the action must have been performed while the officer is acting, purporting, or pretending to act in his or her official duties. *Id.* at

1068–69 (citing *McDade*, 223 F.3d at 1140). Second, the officer's pretense of acting in official capacity must have had the purpose and effect of influencing the behavior of others. *Id.* at 1069. Finally, the challenged conduct must have a meaningful relation to the officer's governmental status or the performance of his duties. *Id.* (citing *Martinez*, 54 F.3d at 987).

Instead of using the *Anderson* test, Sanchez urges the Court to apply a strong presumption of state action in this case because the officers were all on-duty at the time of the incident, citing *dicta* in *Naffe* distinguishing cases involving on-duty versus off-duty encounters. *See* County Opp. at 10–11; Individual Opp. at 8–10; *Naffe*, 789 F.3d at 1037 (an on-duty state employee "typically acts under color of law."). But the two are not mutually exclusive. *Naffe* does not directly state that *Anderson*'s three-part test should *never* be used to guide analysis in cases involving on-duty employees. Sanchez is correct that subsequent Section 1983 cases involving on-duty state actors primarily rely on *Naffe* for the state action analysis, instead of strictly applying the *Anderson* test. *See Davis v. John*, 485 F. Supp. 3d 1207, 1216 (C.D. Cal. 2020) (citing *Naffe* and *Anderson* and finding state action); *Doe v. Cnty. of San Diego*, 445 F. Supp. 3d 957, 967–68 (S.D. Cal. 2020) (citing *Naffe* and finding state action); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1010 (E.D. Cal. 2017) (citing *Naffe* and finding state action); *see also Smith v. Oreol*, No. CV 17-1135-JFW (KKx), 2021 WL 2381843, at *5 (C.D. Cal. May 13, 2021); *Keener v. Antinoro*, 2019 WL 2192121, at *6 (D. Nev. May 21, 2019); *Knickerbocker v. City of Colville*, 2016 WL 4367251, at *6 (E.D. Wash. Aug. 11, 2016); *but see Molera v. City of Nogales*, 2013 WL 4804292, at *3–4 (D. Ariz. Sept. 9, 2013) (citing *Anderson* and *Martinez* to determine on-duty officer did not act under color of state law when tasing subordinate).

But *Naffe* does not create a categorical rule that an on-duty government actor automatically acts under color of law. Indeed, "the critical question is not whether the officers were technically on or off duty, but instead whether [the on-duty employee] exhibited sufficient indicia of state authority for us to conclude that they were acting in an official capacity." *Hyun Ju Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1140–41

(9th Cir. 2020) (citation omitted).  An action becomes attributable to the state when a public employee "use[s] his position to assert influence and control" over another individual. *Sanchez v. California*, 90 F. Supp. 3d 1036, 1036, 1064 (E.D. Cal. 2015).  The mere fact that "all the participants were state employees or that the offending acts occurred during working hours is not enough." *Id.* at 1066 (citing *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992); *Hughes v. Halifax Cnty. School Bd.*, 855 F.2d 183, 186 (4th Cir. 1988)).  In a case that predates both *Anderson* and *Naffe*, the Ninth Circuit held that on-duty public employees were not acting under color of law because the wrongful act was "not in any way related to the performance of the duties of the state employee." *Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476, 479 (9th Cir. 1991).  This inquiry overlaps with the *Anderson* test, and the Court will use it to focus its analysis on whether the record in this case sufficiently rebuts the *Naffe* presumption.

### 1.     Custody Assistant Cheng

Cheng, like Sanchez, was a Custody Assistant and therefore *not* a sworn peace officer like Zavala and Estrada.  ISUF 1, 2.  As a Custody Assistant, Cheng's duties included serving food to inmates, helping clean up the cells, supervising inmate workers, escorting them to court and/or the clinic, and to search inmates.  ISUF 12; *see also* Decl. of Yunfeng Cheng ISO Individual MSJ ¶ 3 [Doc. # 53] (describing job duties in more detail).  As a Custody Assistant, Cheng was not authorized to use a taser.  CSUF 23, 25; ISUF 29, 39.

For conduct to be deemed under the color of state law, "it must bear some similarity to the nature of the powers and duties assigned." *Dang Vang*, 944 F.2d at 480 (citation omitted).  Cheng's status as a Custody Assistant did not enable him to access the taser. *Cf. McDade*, 223 F.3d at 1140 (defendant used state-authorized passcode in accessing official database and thus her action was related to her official duties and under color of state law).  It is undisputed that Cheng used Estrada's taser in the incident, in a setting and manner completely unrelated to his official duties.  CSUF 40; ISUF 15.  Put differently, in that moment Cheng was "pursuing his own goals and was not in any way subject to control by

his public employer." *See Van Ort v. Est. of Stanewich*, 92 F.3d 831, 838 (9th Cir. 1996) (internal brackets and citation omitted).

Cheng was therefore not acting under color of law and cannot be held individually liable for a Section 1983 violation. Summary judgment is **GRANTED** as to both claims against Cheng.

### 2. Deputies Estrada and Zavala

Unlike Cheng, Estrada and Zavala had access to tasers by way of their official duties, and, as Sheriff's deputies, were trained in their use. *See* ISUF 27; Decl. of Oscar Estrada ISO Individual MSJ ¶ 11 [Doc. # 54]; Decl. of Joshua Sanchez ISO Individual MSJ Opp. ¶ 9 [Doc. # 58-3].[3] Their authority to use tasers is not dispositive of the issue, but makes it a somewhat closer call whether Estrada and Zavala were acting under color of law as compared to Cheng. *Cf. McDade*, 223 F.3d at 1140; *see also Ornelas v. City of Pomona*, No. CV 09-6374-DMG (VBKx), 2011 WL 13269427, at *10 (C.D. Cal. June 13, 2011) (citing *Huffman v. Cnty. of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1998)).

On the record before the Court, there is no evidence that the incident was related in any way to Estrada and Zavala's official duties, other than the fact of using their tasers. The facts of this case are closely analogous to *Martinez*, as the incident occurred between on-duty officers, with an officially-issued weapon, during an incident amounting to an escalation of personal antics. *Compare Martinez*, 54 F.3d at 980–83 *with* CSUF 11, 32 (describing Zavala and Estrada's official duties). The incident occurred in what is essentially a break room, not on the floor anywhere near the inmates they were charged with protecting and monitoring. ISUF 4. Sanchez and the Individual Defendants were joking around together, and there are no allegations that either Estrada or Zavala asserted their rank over Sanchez in any manner or sought to influence Sanchez's behavior. *Cf.*

---

[3] Defendants raised no evidentiary objections to anything stated in this paragraph of Sanchez's declaration. The Court has reviewed Defendants' and Sanchez's evidentiary objections [Doc. ## 62, 63, 64], but did not rely on any of the objected-to evidence in reaching its ruling. Accordingly, all objections are **OVERRULED as moot**.

*Anderson*, 451 F.3d at 1069–70 (assertion of official authority to intimidate private individual).  Instead, the actions that gave rise to this lawsuit constituted a "substantial departure from [their] duties for purely personal reasons." *Van Ort*, 92 F.3d at 834.  Section 1983 "does not federalize all torts or other deprivations of rights committed by a person who is a law enforcement officer or other government agent." *Naffe*, 789 F.3d at 1036 (citation omitted).  And *Martinez* cautions against a rule that "*every* use of a policeman's [weapon], even in the course of purely personal pursuits, creates a cause of action under section 1983."  54 F.3d at 987 (emphasis in original); *see also Barna v. City of Perth Amboy*, 42 F.3d 809, 817 (3rd Cir. 1994).  In the absence of more definitive Ninth Circuit guidance on this issue, the Court follows *Martinez*'s reasoning as persuasive.

Accordingly, the Court concludes that Estrada and Zavala were not acting under color of law when Sanchez was injured, and **GRANTS** their motion for summary judgment as to both Section 1983 claims.

**B.  County Defendant**

Public entity liability under Section 1983 may be based on governmental action which, although not authorized by any formal policy, is a "longstanding practice or custom." *See Thomas v. Cnty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (citation omitted).  While the County has a formal policy against hazing and bullying, the parties dispute whether such a "practice or custom" exists in the Department.  *See* County MSJ at 18–21; County Opp. at 14–19.  A public entity may also face liability if it fails to train its employees to prevent a foreseeable constitutional violation, amounting to "deliberate indifference." *See Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016) (*en banc*); County Opp. at 17–19.

Since the Individual Defendants did not act under color of law when they injured Sanchez, the County can be held liable only if (1) it somehow affirmatively placed Sanchez in danger, or (2) if the employer-employee relationship gives rise to a constitutionally significant "special relationship" between Sanchez and the County.  *See Huffman*, 147 F.3d

at 1058–59 (affirming district court's conclusion that officer did not act under color of law when shooting plaintiff but considering whether section 1983 claim can still proceed under state-created danger theory) (citing *DeShaney v. Winnebago Cy. Dep't of Social Servs.*, 489 U.S. 189, 196–200 (1989)); *Van Ort*, 92 F.3d at 835–36; *see also Hyun Ju Park*, 292 F. Supp. 3d at 1090 n.3 (summarizing *Van Ort*'s holding). Such a scenario exists only "under highly limited circumstances," and the policy or practice must be the *proximate cause* of the injuries suffered, not merely the "but-for" cause. *Van Ort*, 92 F.3d at 837; *see also L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992) (some kind of special relationship or state-created danger required to provide *Monell* cause of action for violations committed by private actors).

On the record before the Court, there is no evidence or argument that Sanchez had a "special relationship" with the County. Nor is there evidence giving rise to a triable issue of fact as to the County's knowledge of "hazing" rituals such that the danger was sufficiently "particularized" and foreseeable as to Sanchez specifically. *See Sinclair v. City of Seattle*, 61 F.4th 674, 682–83 (9th Cir. 2023) (to support a Section 1983 claim, a state-created danger must "pose a specific risk" to the plaintiff).

Sanchez raises former Sheriff Alex Villanueva's comments in another case that he was aware of *allegations* of a custom or practice of hazing rituals, but that alone does not rise to the particularized standard required to support this type of claim. *See id.*; County Opp. at 16–17. Moreover, allegations of random acts, or single instances of misconduct, are insufficient to establish a municipal custom. *See Gordon v. Cnty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.") (citation omitted). Therefore, both of Sanchez's theories for public entity liability fail as a matter of law. Summary judgment is **GRANTED** to the County on both claims against it.

//

# V.
# CONCLUSION

In light of the foregoing, the Court **GRANTS** both Motions for Summary Judgment. Judgment will be entered in favor of Defendants.

**IT IS SO ORDERED.**

DATED: December 1, 2023

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE